# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JEROME A. BROWN,                              Case No. 1:06-cv-413
      Petitioner,

                                     Spiegel, J.
   vs                                       Black, M.J.

ERNIE L. MOORE, WARDEN,              **REPORT AND RECOMMENDATION**
      Respondent.

Petitioner brings this case pro se seeking a Writ of Habeas Corpus pursuant to 28 U.S.C.

§ 2254.  This matter is before the Court on the petition (Doc. 3), and respondent's return of writ.

(Doc. 8).

## I. PROCEDURAL HISTORY

This case involves the following facts, as summarized by the First District Ohio Court of

Appeals:[1]

### I. A Car and a Murder

{¶ 2} On the evening of September 16, 2001, two young men with a similar
passion for cars crossed each other's path. The meeting would prove fatal.

{¶ 3} In Cincinnati, Timothy Powell met his friend Jeremy Evans to wash
Powell's car before going out for the evening. Powell owned a white Oldsmobile
Cutlass with expensive gold rims. The pair washed the car, then met two other
friends, Clayton Diamond and Damon Jenkins, at Club Ritz in Bond Hill.

{¶ 4} Meanwhile in Dayton, Brown and a group of friends and acquaintances

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence
of clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94
(6th Cir. 2004).

decided to caravan to Cincinnati to "hit a lick," meaning to steal a car. The group, with between six and eight members in three different cars, drove to Club Ritz to look for cars in the parking lot. Three of the young men were carrying guns- including Brown with his .40-caliber Glock.

{¶ 5} Powell and his friends left the club around closing time. They drove separately back to a parking lot near Evans's apartment. Brown and his crew followed them. Powell and Evans talked in the parking lot for a while, and Evans noticed the three cars from Brown's group drive by.

{¶ 6} When Evans started walking up to his apartment, he saw the same three cars pull up near Powell's car. Three men jumped out of the cars, guns pointed at Powell. Evans hid, fearing for his own safety. Powell attempted to escape, but Brown and the others shot at the car. Brown was standing on the driver's side, shooting directly at Powell. One of the bullets struck Powell in the back, fatally wounding him. The car came to rest when it hit a tree. Brown then got behind the wheel of Powell's car and drove off; some of Brown's cohorts followed Brown, some went in the other direction.

{¶ 7} Evans rushed down to help Powell and called Jenkins and Diamond. Diamond saw Powell's Cutlass and followed it onto the freeway. He then relayed the information over a cellular phone to police who had responded to the scene of the shooting. He also read the officer the temporary-tag number from a Buick Regal that was traveling with Powell's Cutlass.

{¶ 8} The Hamilton County Sheriff's Office sent a cruiser to follow the Regal. But the Regal took off, and the police chased it at speeds of over 100 miles per hour-finally ending when police used stop sticks. The police arrested Anthony Stephens and Douglas Pittman after they got out of the Regal.

{¶ 9} Some time later, another officer was dispatched to investigate a disabled vehicle. The officer found Powell's Cutlass in a ditch, out of gas, and badly damaged. No driver or passengers were at the scene. The car was taken back to Cincinnati to an impound lot and was tested for prints. Because Powell and Evans had just cleaned the car the previous day, there were hardly any usable prints. But a palm print lifted from the driver's side mirror matched Brown's.

{¶ 10} Another five members of the gang, including Brown, were ultimately arrested in connection with the robbery and murder. Brown was charged with aggravated murder, murder, two counts of aggravated robbery, and robbery-all with firearms specifications.

{¶ 11} At trial, all six of Brown's codefendants testified that Brown was involved in the crime and was the one who had actually shot Powell. Several of the

codefendants were spared life sentences for their cooperation in Brown's case.

{¶ 12} For his defense, Brown presented an alibi from several family members. They all claimed that Brown had been at a family gathering that night and had been asleep in his father's, James Brown's, bed. (We refer to James Brown as "James" to avoid confusion with his son.) James testified that they had been watching football that day. Brown's brother and cousin also testified that Brown was there, playing basketball, eating, and sleeping. And Brown's mother, who was not at the family gathering, testified that she took Brown to a job interview early the next morning. Brown also presented the testimony of two inmates who claimed that they had heard some of the codefendants say that Brown had not been involved in the crimes at all.

{¶ 13} But the jury did not believe Brown's alibi or the exculpatory testimony. They found him guilty of all five counts and all five firearm specifications. The trial court merged all the robbery charges together, and it also merged the two murder charges. It sentenced Brown to 13 years for the robberies (10 years, plus three for the firearm specification) and 20 years to life for the murder, to be served consecutively. Brown's total sentence was 33 years' to life imprisonment.

(Doc. 8, Exh. 11 at 2-4).

On June 29, 2006, petitioner filed a petition for writ of habeas corpus in this federal court. The Petition for Writ of Habeas Corpus raises the following grounds for relief:

**GROUND ONE:** SIXTH AMENDMENT

**Supporting FACTS:** The trial court erred by allowing inadmissible hearsay into evidence at trial in the form of newspaper articles about the stoppage of NFL games on Sunday, September 16th, 2001 in violation of appellant's right to confront witnesses as guaranteed to him by the Sixth Amendment to the United States Constitution.

**GROUND TWO:** FIFTH AND FOURTEENTH AMENDMENT.

**Supporting FACTS:** The evidence adduced at trial was insufficient as a matter of law to sustain the conviction rendered below in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

3

**GROUND THREE:** FIFTH AND FOURTEENTH AMENDMENT.

**Supporting FACTS:** The judgment of the trial court is against the manifest weight of the evidence in violation of the fifth and fourteenth amendments to the United States Constitution.

(Doc. 3).

Respondent concedes that the petition is timely and that all of the grounds for relief are exhausted and not procedurally defaulted.  Nevertheless, respondent argues that Grounds One and Two are without merit and that Ground Three of the petition is not cognizable in habeas corpus.


## II.  STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).  In addition, the decisions of the Ohio courts are binding on this Court unless they are contrary to clearly established law or were based on an unreasonable determination of the facts of record. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1.       resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.       resulted in a decision that was based on an unreasonable determination of the

4

> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> The phrases "contrary to" and "unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

> Upon review of the entire record, this Court concludes that petitioner has failed to establish that the findings of the state appellate court are unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor*, 529 U.S. 362 (2000).

## III.  GROUND ONE IS WITHOUT MERIT.

> Ground One of the petition asserts that the trial court erred by allowing inadmissible hearsay into evidence at trial in the form of newspaper articles about the stoppage of NFL games on Sunday, September 16th, 2001 in violation of appellant's right to confront witnesses as guaranteed to him by the Sixth Amendment to the United States Constitution. The First District Court of Appeals overruled this assignment of error, finding that the trial court in fact denied the state's request to introduce this evidence:

*II. Articles Never Admitted*

> {¶ 15} In his first assignment of error, Brown claims that the trial erred by
> "allowing inadmissible hearsay into evidence." He asserts that the trial court
> permitted the state to introduce two *Cincinnati Post* articles that explained that
> the National Football League had cancelled games on September 16, 2001,
> because of the September 11 tragedy at the World Trade Center and the Pentagon.
>
> {¶ 16} The state attempted to introduce these two articles in its rebuttal. In fact,
> this was all that the state tried to do in its rebuttal. It claimed that the articles
> rebutted James's testimony that he and Brown had been watching football that
> day. But the trial court denied the state's request for rebuttal and did not admit the
> two disputed exhibits. The trial court got it right the first time.
>
> {¶ 17} We therefore overrule Brown's first assignment of error.

(Doc. 8, Exh. 11 at 5).

Petitioner has not presented any evidence or argument disputing the factual finding made
by the Ohio Court of Appeals that the trial court did not admit the newspaper articles.  This
finding is, therefore, presumed to be correct.  *See* 28 U.S.C. § 2254(e)(1).  *See also McAdoo*, 365
F.3d at 493-94.  In the absence of any error on the part of the trial court, petitioner's first ground
for relief is without merit and should be denied.


**IV.  GROUND TWO IS WITHOUT MERIT.**

Ground Two of the petition asserts that the evidence adduced at trial was insufficient to
sustain petitioner's convictions.  The Due Process Clause of the Fourteenth Amendment protects
a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of
every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*,
443 U.S. 307, 316  (1979); *In re Winship,* 397 U.S. 358, 364 (1970).  In analyzing claims of
insufficient evidence, the Court must determine whether "after viewing the evidence in the light
most favorable to the prosecution, *any* rational trier of fact could have found the essential

6

elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).  This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.

On habeas corpus review, the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003)(citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id*.  In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.  *See Jackson,* 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002).

Moreover, where a petitioner does not specifically challenge the factual findings made by the state court, but rather only the inferences or conclusions drawn therefrom, the federal habeas court need not examine the underlying trial transcript before dismissing the petitioner's claims. *Loveday v. Davis*, 697 F.2d 135, 139 (6th Cir. 1983).  Although the Sixth Circuit has rejected the notion that it is never appropriate to deny an insufficiency of the evidence claim without an examination of the underlying trial record, *Id.* at 139, "where . . . the testimony at trial is summarized in the state appellate court's opinion and the petitioner does not quarrel with that summary but simply contends that a rational trier of fact could not have inferred from it guilt beyond a reasonable doubt," the district court is not required to examine the trial transcript.  *Id*. at 139-140 (quoting *Davis v. Franzen*, 671 F.2d 1056, 1057 (7th Cir.  1982).  As the Sixth

7

Circuit recently determined:

> Since *Loveday* was decided, the applicable level of deference to state fact-
> findings has, if anything, become greater under the provisions of AEDPA.  *See* 28
> U.S.C. § 2254(e)(1).  Thus, while *Loveday* was decided under different statutory
> provisions, nothing in the intervening revisions undermines its analysis.  Indeed,
> this court recently acknowledged that *Loveday* "prohibits the imposition of a
> general rule requiring district courts to review the transcript in all cases. . . ."
> *Nash v. Eberlin*, 437 F.3d 519, 525 (6th Cir. 2006).

*Clark v. Waller,* 490 F.3d 551, 555 (6th Cir. 2007).  In *Clark*, the Sixth Circuit concluded that a

district court need not examine the state trial transcript where "(1) the state court opinions

summarize the trial testimony or relevant facts; and (2) the petitioner does not quarrel with that

summary and instead contends only that the trier of facts should have reached a different

conclusion." 490 F.3d at 556 (quoting *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993).

In the instant case, the First District Court of Appeals overruled petitioner's insufficiency

of evidence claim as follows:

### III. Sufficiency and Weight of the Evidence

{¶ 18} We address Brown's second and third assignments together because they
concern the sufficiency and the weight of the evidence.  In reviewing a record for
sufficiency, we must determine whether any rational trier of fact could have found
the essential elements of the crime proved beyond a reasonable doubt, when
viewing the evidence in the light most favorable to the prosecution.

{¶ 19} A review of the manifest weight of the evidence puts the appellate court in
the role of a "thirteenth juror."  We must review the entire record, weigh the
evidence, consider the credibility of the witnesses, and determine whether the
trier of fact clearly lost its way and created a manifest miscarriage of justice. "No
judgment resulting from a trial by jury shall be reversed on the weight of the
evidence except by the concurrence of all three judges hearing the case."  And a
new trial should be granted on the weight of the evidence only in exceptional
cases.

{¶ 20} Six witnesses testified that Brown was the one who had shot Powell. Brown now points out that all six of these witnesses were codefendants who had received reduced sentences. He argues that their testimony was unreliable because their stories changed and conflicted to such a degree that reasonable doubt precluded a guilty verdict. But the codefendants' stories did not vary by much. All six witnesses agreed that Brown had jumped out of one of the cars, stood next to the driver's side door, and shot into the car. Brown was also identified as carrying the only weapon capable of firing the bullet that was later found in Powell's body.

{¶ 21} Further, Brown's palm print was on the driver's side mirror of Powell's car. Brown contends that the state failed to prove a temporal link, claiming that his print could have been placed there any time prior to the shooting. But the record shows that there were hardly any prints anywhere on the car. And Powell and Evans had washed the car earlier that night. Further, the codefendants' unanimous testimony that Brown had driven Powell's car after shooting him was enough to create a temporal link between Brown's palm print and the time of the shooting.

{¶ 22} Viewing the evidence in the light most favorable to the state, a rational trier of fact could have found Brown guilty. And we cannot say that the jury lost its way or created a manifest miscarriage of justice by finding Brown guilty.

(Doc. 8, Exh. 11 at 5-7) (internal citations and footnotes omitted).

Here, petitioner has failed to present any, let alone clear and convincing, evidence that the findings noted above are incorrect. Petitioner does not challenge the accuracy of the Ohio Court of Appeals' summary of the evidence, nor has he offered any evidence or arguments disputing the specific facts summarized in the Court of Appeals' decision. His petition asserts only that the evidence was "insufficient as a matter of law to sustain the conviction." (Doc. 3 at 7).

Nonetheless, as the Ohio Court of Appeals' summary of the evidence indicates, six witnesses testified petitioner was the shooter and drove the victim's car immediately following the shooting, his hand print was found on the driver's side mirror of the car, and the bullet found in the victim's body was from the weapon petitioner was identified as carrying. When viewing

9

this evidence in the light most favorable to the prosecution, see *Jackson v. Virginia, supra*, and for the reasons discussed by the state appellate court, this Court likewise concludes that the evidence was constitutionally sufficient to sustain petitioner's convictions.

Based on a review of the state court of appeals' findings and the pleadings before this Court, this Court concludes that petitioner has failed to establish the standards contained in *Jackson v. Virginia* and 28 U.S.C. § 2254(e)(1).  Therefore, Ground Two of the petition is without merit and should be denied.

## V.  GROUND THREE IS NOT COGNIZABLE IN HABEAS CORPUS.

In Ground Three of the petition, petitioner asserts his convictions were against the manifest weight of the evidence.  A "manifest weight of evidence" claim, which is based on a state law concept that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency of evidence standard,[2] raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this.  *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).

In the context of a claim alleging a violation of due process, "sufficiency of the evidence"

---

[2]  *See Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982), and *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (1997), superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997).

refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence–as opposed to one based upon insufficient evidence–requires the appellate court to act as a "thirteenth juror" and to review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720 (1st Dist. Ohio 1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982).

Here, since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court. Therefore, petitioner's third claim should be dismissed as non-cognizable.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on the claim. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: 10/24/2007                              s/Timothy S. Black
        KI                                    Timothy S. Black
                                              United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JEROME A. BROWN,                  Case No. 1:06-cv-413
     Petitioner

                                        Spiegel, J.
  vs                                Black, M.J.


ERNIE L. MOORE, WARDEN,
     Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

13